United States District Court
Southern District of Texas
**ENTERED**
December 01, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Progressive Hawaii Insurance Corporation, | § § § § | |
| *Plaintiff,* | § § | Case No. 4:20-cv-02726 |
| v. | § § § | |
| D&N Transportation, Inc., Keith Steadman and Durga Acharya, | § § § | |
| *Defendants.* | § § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Before the Court is the Motion to Intervene filed by Lisa Frederick, Arthur Frederick, Jr., Anjelisa Frederick, Aaron Frederick, and Alex Frederick (collectively, the "Fredericks") and the Motion for Summary Judgment filed by Plaintiff Progressive Hawaii Insurance Corporation ("Progressive").  Dkts. 40, 58.  After carefully considering the motions, responses, and supplemental briefing, Dkts. 60-62, 65-68, it is recommended that both motions be denied. In addition, and consistent with its affirmative duty to determine whether subject-matter jurisdiction exists, the Court recommends that all claims and counterclaims be dismissed as moot.

1

## Background and Procedural History

### I.    Progressive's declaratory judgment action

On October 26, 2019, Keith Steadman was driving D&N Transportation Inc.'s ("D&N") tractor-trailer east on Interstate Highway 10.  Dkt. 1 at ¶ 8; Dkt. 58 at 2-3, 9-10.  While en route to a job in Alabama, Steadman was involved in a three-car accident with Durga Acharya, the driver of the first vehicle.  *Id*.  Acharya sued D&N and Steadman in the District Court of Harris County, Texas, and that underlying lawsuit was removed to this Court, styled as *Acharya v. D&N Transportation, Inc., et. al*, Civil Action No. 4:20-cv-02072, Dkt. 1 (S.D. Tex. June 12, 2020) (the "Underlying Suit").  Dkt. 1 at ¶ 12.

Progressive filed this lawsuit, naming as defendants D&N, Steadman, and Acharya.  Dkt. 1.  Progressive sought a declaration that it need not defend nor indemnify D&N or Steadman under policy number 07906309-1 because the tractor-trailer involved in the accident was not listed as a "covered auto," as defined in the policy.  *Id*. at ¶ 9-11.

As for the relief sought, Progressive explicitly limited its requested declarations to the *Acharya* suit.  The first request concerned the duty to defend and indemnify D&N and Steadman in that Underlying Suit:

> Progressive specifically requests that declaratory judgment be entered that its policy no. 07906309-1 provides no bodily injury or property damage liability coverage to D&N or Steadman for the October 26, 2019 highway accident *involving Durga Acharya* and that Progressive has no duty to Defend D&N or Steadman and no

duty to indemnify for *any resulting judgment or liability in favor of Acharya....*

*Id.* at ¶ 14 (emphasis added).  Progressive also sought a declaration that it had no obligation to act as a surety under the MCS-90 endorsement attached to D&N's policy—which, again, was limited to "any resulting judgment or settlement in the *Acharya pending action*."  *Id.* at ¶ 15-18 (emphasis added). That Underlying Suit was dismissed on June 3, 2021, pursuant to a settlement.  *See Acharya*, 4:20-cv-02072, Dkt. 14 (S.D. Tex. June 3, 2021).

The ensuing procedural history of this case is convoluted—including a six-month delay before D&N and Steadman were served (Dkts. 8, 14, 15), defaults that were eventually cured (Dkts. 19-22, 27-35), and D&N and Steadman's pleading of counterclaims and cross-claims against now-dismissed parties (Dkts. 41-48, 50-52, 54-57).  Significantly, however, Progressive did not amend its Complaint or seek to join additional defendants at any time before filing its motion for summary judgment.

## II.    The Fredericks' motion to intervene

On September 23, 2021, over a year after this suit commenced, the survivors and estate of Arthur Frederick (collectively, the "Fredericks"), filed a motion to intervene as defendants.  Dkt. 40.  Arthur Frederick was the driver of the second vehicle in the three-car collision.  Dkt. 59, Ex. 7 at 286 (Frederick First Amended Petition).  Even though Frederick suffered fatal

injuries when his vehicle was struck by Steadman's tractor-trailer and Acharya's vehicle, neither he nor his heirs were named as parties in this suit or in the Underlying Suit. *See* Dkt. 1 at ¶ 1-4, 12, Dkt. 40 at 9-10 (settlement order between Acharya, Steadman, and D&N). They were likewise never named by D&N, Steadman, or Acharya as cross-defendants or joined as necessary defendants. *See* Dkts. 41-48, 50-52, 54-57.

The Fredericks therefore sought to intervene in the coverage dispute pursuant to Fed. R. Civ. P. 24(a) and (b), arguing that they "have an interest related to this suit that is direct, substantial, and legally protectable." *Id.* at 3-4. They argued that D&N, Steadman, and Acharya had settled their claims in the Underlying Suit, thus eliminating Acharya's remaining interest in defending the current lawsuit and leaving the Fredericks' interests inadequately represented. *Id.* at 4.

No party responded to the Fredericks' motion to intervene. Indeed, not until filing its motion for summary judgment did Progressive acknowledge the Fredericks and the separate lawsuit they have filed, styled as *Lisa Frederick et al. v. Durga Acharya et al.*, Cause No. 2021-54965 in the 234th Judicial District of Harris County, Texas (the "Frederick Suit"). *Id.* at ¶ 11; Dkt. 58 at 3. Progressive's summary-judgment motion nonetheless described the Fredericks as parties "who's (sic) joinder is necessary for complete adjucation (sic) of the question." Dkt. 58 at 3. Progressive also acknowledged that

4

Acharya settled her claims "and her interests are moot." *Id.*

Progressive thus re-tooled and broadened its request for declaratory judgment that was sought in its Complaint; it now moves for a "declaratory judgment that it has no duty to defend D&N Transportation and Keith Steadman in the pending *state court action brought by the Fredericks*"—rather than Acharya's Underlying Suit—"and that the MCS-90 does not apply to require Progressive to pay *any ensuing judgment against D&N*"—instead of any liability stemming from the Underlying Suit. *Id.* at 13.

Given the realignment of parties, Steadman and D&N were the only named defendants to file responses to Progressive's motion for summary judgment, which were identical in substance. *See* Dkts. 60, 61. The Fredericks also filed a response, even though their motion to intervene has not been granted. *See* Dkt. 62. Progressive did not file any replies in support of summary judgment.

## III.   Supplemental briefing

Given Progressive's description of Acharya's interests as "moot," the Court ordered the parties to submit supplemental briefing on whether any controversy remained over Progressive's duty to defend and indemnify D&N and Steadman in Acharya's Underlying Suit and, relatedly, whether D&N and Steadman's counterclaims had been mooted by the settlement of that suit. The parties and the Fredericks submitted briefing that addressed both points.

5

*See* Dkts. 65-68.

Specifically, Progressive stated that its declaratory judgment action regarding coverage of Acharya's Underlying Suit was moot because "[t]here is no live case or controversy regarding [the] duty to defend or indemnify D&N or Steadman from [Acharya's] claims because her claims have been extinguished."  Dkt. 65 at 1.  D&N and Steadman agreed, and there is apparently no dispute over who bears responsibility to pay Acharya her settlement amount.  Dkts. 66 at 1, 67 at 1.  D&N and Steadman also explained that their counterclaims were moot and would have been jointly dismissed, if not for a communication error between counsel.  Dkts. 66 at 2-3, 67 at 2-3.

## Standard of Review

### I.   Summary judgment standard

A court must grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material if the issue that it tends to resolve "could affect the outcome of the action."  *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (citing *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir.

2010)).  When resolving a motion for summary judgment, the court must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party."  *See Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted).

## II.   <u>Intervention standard</u>

A party may intervene as a matter of right if (1) the motion is timely; (2) the movant has an interest that is related to the property or transaction that forms the basis of the pending lawsuit; (3) the disposition of the pending lawsuit may impair the movant's ability to protect her interest; and (4) the existing parties do not adequately represent the movant's interest.  *See* Fed. R. Civ. P. 24(a)(2); *Ford v. City of Huntsville,* 242 F.3d 235, 239 (5th Cir. 2001).

A party may be entitled to permissive intervention where its claim and the main action share a common question of law or fact.  *See* Fed. R. Civ. P. 24(b)(2).  Permissive intervention is a matter "wholly discretionary with the [district] court ... even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Staley v. Harris Cnty., Tex.,* 160 F. App'x 410, 414 (5th Cir. 2005) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 471 (5th Cir.1984)).

## <u>Analysis</u>

The Court recommends that both Progressive's motion for summary judgment and the Fredericks' motion to intervene be denied.   First,

7

Progressive cannot obtain summary judgment on requests for declaratory relief of non-coverage for a different underlying suit (between its insureds, D&N and Steadman, and the Fredericks) than the one asserted in its pleadings. Progressive's pleadings target solely the Acharya suit, which was fully resolved and is now moot. Progressive's further request for a declaration that resolves its obligations under the MCS-90 endorsement is premature, regardless of whether the Fredericks had been parties to this suit. That dispute would not be ripe unless and until the Fredericks obtain a final judgment awarding them recovery against D&N and Steadman in the Fredericks' pending state-court suit.

Second, rejection of Progressive's attempt to expand its claims to encompass the Fredericks' suit obviates the Fredericks' interests here, thereby warranting denial of the Fredericks' motion to intervene. As noted, Progressive failed to properly plead any requests for declaratory relief about the Fredericks' suit, and any dispute over Progressive's duty to indemnify the Fredericks pursuant to the MCS-90 endorsement is unripe.

Finally, given their limited scope, the parties' claims and counterclaims no longer present a live controversy now that the sole, underlying Acharya suit has been resolved. Dismissal is therefore warranted.

I.   **Progressive's duty to defend or indemnify D&N and Steadman in the Frederick Suit is not properly before the Court.**

Although Progressive's contention that it owes no coverage to its insured is straightforward, its requested relief is nonetheless inappropriate. To be sure, no defendant challenges whether that D&N's policy number 07906309-1 (the "Policy") with Progressive covers the D&N vehicles that were involved in the accident. *See* Dkts. 61, 62, 66, 67 (D&N and Steadman failing to address this issue). Coverage under the policy is limited to "insured autos," which are defined as "any auto specifically described on the declarations page." Dkt. 59, Ex. 2 at 79 ("Additional Definitions" applicable to liability to others). Yet the vehicle Steadman was driving for D&N during the accident was not included on declarations page. *Compare id.* at 10 (listing two tractors, VIN numbers 1FUJA6CK47LW91603 and 5E0AH14428G214703), *with id.*, Ex. 1 at 4 (accident report with tractor VIN number 2FZHCMCVX7AY02727). To the contrary, D&N only attempted to add the relevant vehicles to the Policy *after* the accident took place. *See id.*, Exs. 5 and 6 (declaration of Progressive's Business Systems Consultant and audio recording of D&N's after-the-fact call attempting to insure the accident vehicles).

But Progressive did not file its motion for summary judgment seeking a declaration of non-coverage against D&N and Steadman in Acharya's Underlying Suit—even though the only declaratory judgment sought in the

9

Complaint "specifically requests … that Progressive has no duty to Defend D&N or Steadman and no duty to indemnify for *any resulting judgment or liability in favor of Acharya*."   *Id.* at ¶ 14 (emphasis added).   Rather, Progressive's motion and supplemental briefing concede that Acharya's interests are moot.   *See* Dkt. 58 at 3; Dkt. 65 at 1 ("There is no longer any bona fide case and controversy regarding [Acharya's] rights or potential interest in Plaintiff's commercial auto policy.").

Instead, Progressive's motion seeks a new and different declaration that "it has no duty to defend or indemnity (sic) D&N Transportation and Keith Steadman in the pending state court action brought *by the Fredericks* and that the MCS-90 does not apply to require Progressive to pay *any ensuing judgment* against D&N."   Dkt. 58 at 13.   This prayer effectively substitutes the Fredericks for Acharya and the Frederick Suit for Acharya's Underlying Suit.   But the Fredericks, who remain non-parties to this lawsuit, cannot be bound by a declaratory judgment action between Progressive and its insureds over Acharya's lawsuit.   *See KBR Inc. v. Chevedden*, 2011 WL 1463611, at *2 n.2 (S.D. Tex. Apr. 4, 2011) (declaratory judgments are not res judicata as to non-parties), *aff'd*, 478 F. App'x 213 (5th Cir. 2012); *Sentry Select Ins. Co. v. Home State Cnty. Mut. Ins. Co.*, 533 F. Supp. 3d 466, 479 (S.D. Tex. 2021) (same principle in a coverage dispute applying Texas law), *aff'd*, 2022 WL 2800809 (5th Cir. July 18, 2022).

Progressive's motion for summary judgment therefore should be denied for the straightforward reason that it seeks disposition of a claim it never alleged, and against a party it never sued. *Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789-90 (5th Cir. 2021) ("Our precedent precludes a plaintiff from advancing a new claim or reframing a previously presented one" in summary judgment briefing.).  The scheduling order required Progressive to amend its pleadings and add any new parties by August 31, 2021, nearly a year before its summary-judgment motion was filed.  Dkt. 38; Dkt. 58.  The parties agreed to an extension of that deadline, but only until October 15, 2021.  Dkt. 39. Allowing Progressive both to join the Fredericks and amend its claims—all by way of a summary judgment motion—would circumvent the rules and principles governing notice and timeliness.[1]   *See U.S. ex rel. DeKort v.*

---

[1] The Fifth Circuit has taken two different approaches when confronting new claims raised for the first time at the summary judgment stage.  "The first approach states that a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the Court." *Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021) (internal quotations omitted). "The second approach instructs the district court to treat a new claim raised in response to a motion for summary judgment as a request for leave to amend.  The district court must then determine whether leave should be granted." *Id.*  Despite acknowledging the divergent approaches, the Fifth Circuit does not appear to endorse or disfavor either approach.  *See generally id.*; *Elliott v. Quintana*, 336 F. App'x 405, 406 (5th Cir. 2009) ("Our authorities are split on whether the district court had to construe the inclusion of new arguments in the summary judgment motion as a motion to amend the pleadings.").

Accordingly, in the interest of completeness, this Court finds that, even if were to take the second approach and consider Progressive's newly raised claims as a motion for leave to amend, such motion should be denied.  "Leave to amend a complaint

*Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) (liberal pleading standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage," and "the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)"); *accord Kenon v. City of S. Padre Island*, 2011 WL 13069402, at *1 (S.D. Tex. Jan. 19, 2011) (collecting authority in other circuits that parties cannot raise new claims during the summary judgment phase), *rev'd on other grounds*, 452 F. App'x 518 (5th Cir. 2011).

This is especially true here, as Progressive limited its suit to Acharya's Underlying Suit and only acknowledged the Frederick Suit in its motion for summary judgment.   Dkt. 58 at 3.   Before Progressive filed its motion, the record lacked even the basic information—the policy and the relevant underlying petition that constitute the "eight corners"—essential to resolving

---

requires modifying the scheduling order, which can only be granted for good cause." *Douglas*, 992 F.3d at 373. And even after good cause has been shown, the Court "may then consider a variety of factors under Rule 15(a)(2)'s more liberal pleading standard … [such as] (1) repeated failures to cure deficiencies by amendments previously allowed and (2) futility of the proposed amendment." *Id.* (internal quotations omitted). Progressive has not shown good cause. Progressive agreed to a scheduling order setting August 31, 2021 as the deadline for amending pleadings and joining new parties. Dkt. 37, 38. That deadline was ordered by the Court, Dkt. 38, and only incrementally extended to October 15, 2021 by agreement of the parties, Dkt. 39. Both deadlines had long expired by the time Progressive filed its motion for summary judgment on June 29, 2022. Dkt. 58. Far from demonstrating good cause, Progressive offers no justification for its oversight. Moreover, as discussed below, Progressive's amendment to include the Fredericks would be futile, because the declaratory judgment claim on the MCS-90 issue is premature. *See infra* Part II.

coverage issues under Texas law.[2]  *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.*, 249 F.3d 389, 391 (5th Cir. 2001) (explaining Texas law on coverage determinations).  And when Progressive eventually provided a copy of the underlying state-court pleading, the petition it submitted was the Fredericks'.  *See* Dkt. 59 at Ex. 7 at 284-93 (the Fredericks' state court petition).  To date, the petition in the Acharya Suit has never been submitted.

Accordingly, Progressive has no live claim for a declaratory judgment that "it has no duty to defend or indemnity (sic) D&N Transportation and Keith Steadman in the pending state court action brought by the Fredericks"—the only declaration Progressive properly pleaded.  Progressive cannot use its motion for summary judgment to overhaul its Complaint by

---

[2] Although Progressive's motion invokes Texas law and precedent, the policy does not have a choice of law provision.  *See* Dkt. 59, Ex. 2 at 7-134 (D&N's Policy).  But the parties do not raise any conflicts-of-law issues, and the Court discerns no conflicts on the general legal principles necessary to resolve the motion.  In both Texas (the forum state and the site of the underlying accident) and Tennessee (the location where the policy was issued, the state whose form contract was used, and the domicile of the insured, D&N), insurance contracts are interpreted under the same principles of construction as ordinary contracts.  *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009); *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386-87 (Tenn. 2009).  The terms are thus given their plain and ordinary meaning, as a reflection of the contracting parties' intent.  *Id.*  Moreover, both jurisdictions resolve the duty to defend by examining the insurance policy and the allegations in the underlying suit.  *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834-35 (Tenn. 1994).

Given the lack of any relevant conflict between Texas and Tennessee law, a choice-of-law analysis is unnecessary.  The Court therefore applies the substantive law of the forum state—Texas.  *Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 687 (5th Cir. 2019).

injecting new claims.  It is therefore recommended that Progressive's motion for summary judgment on the coverage issue be denied.

## II.   **Progressive's claim for a declaratory judgment on the application of the MCS-90 endorsement is premature.**

The Court next addresses Progressive's request for a declaration "that the MCS-90 does not apply to require Progressive to pay any ensuing judgment against D&N." Dkt. 58 at 13.  That request attempts to re-tool and expand Progressive's claim beyond Acharya's Underlying Suit to capture the Frederick Suit instead.  For the reasons set forth above, Progressive should be procedurally barred from seeking summary judgment on a claim it never pleaded, and that would bind new parties.  *See supra* Part I.

Progressive's argument is also flawed in substance.  Progressive mischaracterizes the MCS-90 endorsement included in the Policy as an "indemnity" obligation that can be determined at the coverage stage.  Dkt. 58 at 8.  Yet "[t]he Fifth Circuit treats the MCS-90 endorsement as a suretyship, rather than an indemnity relationship between an insurer and insured." *Progressive Com. Cas. Ins. Co. v. Xpress Transp. Logistics, LLC*, 2022 WL 103555, at *6 (S.D. Tex. Jan. 11, 2022) (citing *Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Servs., Inc.*, 409 F.3d 256, 260 (5th Cir. 2005)).

The MCS-90 endorsement "had its origin in the [Interstate Commerce Commission's] desire that the public be adequately protected when a licensed

carrier used a leased vehicle to transport goods" and that vehicle was not covered by the carrier's policy. *Wells v. Gulf Ins. Co.*, 484 F.3d 313, 316-17 (5th Cir. 2007). To prevent the public from suffering injuries in accidents involving uninsured vehicles, without prospect of recovery, "the MCS-90 makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, *even if the vehicle is not covered under the insurance policy*." *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 671 (5th Cir. 2001) (emphasis added).

The MCS-90 thus imposes a suretyship obligation on the insurer to provide a "safety net for the public" and is "not an ordinary insurance provision to protect the insured." *Xpress Trans. Logistics*, 2022 WL 103555, at *6 (quoting *Travelers Indem.*, 409 F.3d at 260). So even though the MCS-90 endorsement is included in interstate motor carriers' policies, and those carriers pay additional fees to "assure compliance with federal minimum levels of financial responsibility for motor carriers," the intended beneficiary of the endorsement is the public—not the insured. *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010) (citing 49 C.F.R. §§ 387.3, 387.7, 387.15).

The three-way nature of the suretyship relationship between the insurer, policyholder, and underlying tort plaintiff makes the MCS-90's application "peculiar." *Travelers Indem.*, 409 F.3d at 260. It does not expand coverage under the policy, but rather is "triggered when the policy to which it

15

is attached does *not* provide coverage to the insured." *Minter v. Great Am.
Ins. Co. of N.Y.*, 423 F.3d 460, 470-71 (5th Cir. 2005). It then "broadens the
insurer's duty to pay [the judgment to the underlying tort plaintiff], and the
insured incurs a duty to reimburse the insurer." *Wells*, 484 F.3d at 317. In
other words, should Progressive need to pay a judgment creditor in an
underlying suit pursuant to the MCS-90 endorsement, it would pay the
judgment creditor directly and then seek reimbursement from its insured,
D&N. *Id.*; *Travelers Indem*, 409 F.3d at 256, 260.

The mechanics of the MCS-90 underscore why Progressive's failure to
timely amend its Complaint or join the Fredericks in this suit precludes
Progressive's requested relief. Even if Progressive were to win declarations
of no-coverage for every lawsuit arising out of the Acharya-Frederick-
Steadman accident, that would not foreclose the MCS-90 from requiring
Progressive to serve as a surety and pay a judgment to the Fredericks.

That procedural barrier is secondary, however, to the unripe nature of
Progressive's claim. The MCS-90 endorsement specifies that Progressive's
obligation to pay the injured member of the public arises only after that
person's injury matures into liability and a "final judgment" against D&N:

> [T]he insurer (the company) agrees to pay, within the
> limits of liability described herein, any final judgment
> recovered against the insured for public liability
> resulting from negligence in the operation,
> maintenance or use of motor vehicles subject to the

> financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy* and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.... It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement or any other endorsement thereon or violation thereof, shall relieve the company from liability or from the payment of *any final judgment*, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured…. The insured *agrees to reimburse the company* for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.  It is further understood and agreed that, upon failure of the company to pay *any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.*

Dkt. 59, Ex. 2 at 15.

At this point there is no final judgment that would trigger either Progressive's surety obligation or D&N's reimbursement obligation to Progressive.   The Frederick Suit is still ongoing—as evidenced by Progressive's request to clarify its duty to defend in the Frederick Suit and its characterization of a judgment in that suit as "ensuing."  Dkt. 58 at 13.  So even if the Fredericks were properly joined in this dispute, it would still be

premature for Progressive to seek preemptive release from its MCS-90 obligations to the Fredericks.

Lack of ripeness is also fatal to Progressive's claim because its "obligations under the MCS-90 endorsement are controlled by the facts proven in the [u]nderlying [s]uit"—here, the facts that remain undecided in the Frederick Suit. *See Canal Ins. Co. v. XMEX Transp., LLC*, 126 F. Supp. 3d 820, 829-30 (W.D. Tex. 2015) (citing *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 601 (5th Cir. 2011)). Here, the parties debate whether Steadman was engaged in "transportation" of property in "interstate commerce" pursuant to the Motor Carrier Act. *See* Dkt. 58 at 8-14; Dkts. 60-62. Consistent with other decisions, this Court declines to resolve those questions prematurely. Instead, Progressive's motion should be denied without prejudice so that the parties (and the Fredericks) can litigate these issues if or when the Fredericks obtain a final judgment against D&N and Steadman in their state-court suit. *See, e.g.*, *Xpress Transport Logistics*, 2022 WL 6779078, at \*6 (declining to resolve the dispute over MCS-90 endorsement obligations while underlying litigation was pending); *XMEX Transp*, 126 F. Supp. 3d at 830 (denying summary judgment without prejudice to seeking a determination after appeal of underlying judgment concludes).

## III. <u>The Fredericks' Motion to Intervene should be denied.</u>

Resolution of Progressive's motion for summary judgment also bears on

the Fredericks' motion to intervene.  Dkt. 40.  For the reasons set forth above, *supra*, Section I, Progressive should be barred from reshaping its claim on summary judgment, to encompass coverage or MCS-90 determinations about the Frederick Suit.  That disposition, in turn, obviates the Fredericks' interests in this suit.  The Fredericks therefore cannot show that their interests would be inadequately represented such that they can intervene as a matter of right.  *See* Fed. R. Civ. P. 24(a).

Similarly, the Court declines to exercise its discretion to permit the Fredericks to intervene pursuant to Fed. R. Civ. P. 24(b).  Although the Fredericks' intervention would remedy Progressive's failure to join them in this suit, it would not make the MCS-90 dispute ripe for resolution.  For that to occur, the Fredericks first must prevail in their state-court lawsuit, perfect their claim into a final judgment, and demand and be refused payment (as judgment creditors) from D&N and Steadman.  As such, the Fredericks' motion to intervene should be denied without prejudice to seeking a resolution of the MCS-90 obligation at the appropriate juncture.

## IV.   **All claims and counterclaims should be dismissed for lack of subject-matter jurisdiction.**

Finally, while no party has moved for dismissal of any claims, the Court is "duty-bound to examine the basis of subject matter jurisdiction *sua sponte*." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004)

(citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"Federal courts have jurisdiction only over 'cases' or 'controversies.'" *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016).  "If a party's claims are moot, there is no actual and ongoing controversy within the court's subject-matter jurisdiction." *Russell v. Harris Cnty., Texas*, 500 F. Supp. 3d 577, 595 (S.D. Tex. Nov. 10, 2020) (citing *Honig v. Doe*, 484 U.S. 305, 317 (1988)).  "If a dispute has been resolved or if it has evanesced because of changed circumstances, including passage of time, it is considered moot.  With the designation of mootness comes the concomitant designation of non-justiciability." *Id.* at 595-96 (quoting *Am. Med Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988)).

In their supplemental briefing, the parties have made it clear that none of them maintain a case or controversy over coverage for Acharya's Underlying Suit.  Progressive stated that "[t]here is no live case or controversy regarding [the] duty to defend or indemnify D&N or Steadman [against Acharya's] claims because her claims have been extinguished."  Dkt. 65 at 1 (referencing and attaching the dismissal order and settlement agreement of the Archarya Suit).  D&N and Steadman similarly agreed that "[n]o live case or controversy exists regarding the duty of Progressive to defend or indemnify

either Defendant from Acharya (sic) claims." Dkts. 66 at 1, 67 at 1.  D&N and Steadman further admitted that their counterclaims were moot and should have been dismissed, as they also concerned coverage of the Acharya Suit. Dkts. 66 at 2-3; 67 at 2-3.

As explained *supra* in Sections I and II, Progressive pleaded for a declaration of non-coverage in the Acharya Suit—and only in that suit.  D&N and Steadman's counterclaims also arose out of Progressive's refusal to defend and indemnify them against Acharya's claims.  *See* Dkts 41, 42, 43 at ¶¶ 21-25 (alleging identical counterclaims for declaratory judgment, breach of contract, and violation of the Texas Insurance Code).  The parties agree that each of these pleaded claims and counterclaims are moot and therefore non-justiciable.  *See Russell*, 500 F. Supp. 3d at 595-96.  Moreover, the Fredericks were not implicated in any party's pleadings, so any remaining dispute over the Frederick Suit cannot confer subject-matter jurisdiction here.

Accordingly, the Court lacks subject-matter jurisdiction because no case or controversy remains.  *Williams*, 843 F.3d at 620.  The proper course is to dismiss Progressive's claims and D&N and Steadman's counterclaims, without prejudice.  Fed. R. Civ. P. 12(h)(3).

## Recommendation

It is therefore **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (Dkt. 58) and **DENY** the Fredericks' motion to

intervene (Dkt. 40). It is further **RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE** Progressive's claims and D&N and Steadman's counterclaims for lack of subject-matter jurisdiction and enter a final, take-nothing judgment on both sides' claims.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on December 1, 2022, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge